IN THE UNITED STATES DISTRICT COURTS FOR, THE
— EASTERN DISTRICT OF PENNSYLVANIA —

DESMOND ABERNATHY
PLAINTIFF
PRO SE
V.

CITY OF PHILADELPHIA
(NOT) ET'AL
DEFENDANT

CIVIL ACTION No.
#17-2784

JUNE 03, 2019

PAGE: 1 OF 8

FILED
JUN 08 2019
KATE BARKMAN, Clerk
By ___ Dep. Clerk

PLAINTIFF PETITION / MOTION —

TO: ECF NO. 8

NOW COMES PLAINTIFF (BEFORE) THE HONORABLE COURTS
WITHIN THIS MOTION, IN WHICH PLAINTIFF SUBMITS; STATEMENTS
OF FACTS, SOLID EVIDENCE, AND IRREFUTABLE EVIDENCE TO DEFENDANTS
"UNLAWFULNESS," AND VIOLATIONS OF PLAINTIFF 4TH AMENDMENT
RIGHT (290 SUPER 165) ON MAY 03, 2016 - MAY 09, 2016 AS (STATED)
BELOW (IN):

EXHIBIT "A" 4TH AMENDMENT VIOLATIONS
EXHIBIT "B" SEARCH WARRANT #195616
EXHIBIT "C" PRELIMINARY HEARING TRANS. (1-24)
EXHIBIT "D" A. APPROVED SUMMARY #3 & #5
EXHIBIT "E" FRANKS V. DELAWARE
EXHIBIT "F" PAGE 6 OF 8, 7 OF 8, & 8 OF 8
EXHIBIT "G" IRREFUTABLE PHYSICAL BALLISTIC
EVIDENCE*

RECEIVED

JUN - 6 2019

FILED

JUN 06 2019

KATE BARKMAN, Clerk
By _____ Dep. Clerk

*Exhibit A*

"The Exclusionary Rule"

4TH Amendment Violations of (290PA.SUPER 165)

By Defendant

Badge#4059

The City of Philadelphia

(Not) Et'Al

CASS#CP-51-CR-0006258-2016

2 of 8

1. A.) City of Philadelphia (NcD) ETAL defendant Badge # 4059
2.
3. On & between May 03, 2016 - May 09, 2016 (made) deliberate
4. "False" statements disregarding the truth (as) A necessary
5. to "establish" probable cause (for) shooting plaintiff, And then
6. illegally arresting plaintiff on May 03, 2016 "Without"
7. probable cause Franks V. Delaware 438 U.S. 154, 98, S. Ct. 2674,
8. 57, L. Ed 2d 667 (1978) is instructive (to) such deliberate
9. False statements, disregarding the truth (when) there (is)
10. "No Probable cause" (otherwise) # 28 - #11 (page 3 of 8)
11.
12. B.) Schmidt (Badge # 3761 defendants partner made deliberate
13. "False" statements disregarding the truth (to) "support"
14. defendant Affidavits And also gave/included A illustration
15. of such falsity page 8 of 8 to support defendants "Unlawful"
16. Actions on May 03, 2016 (in) which Franks V. Delaware (1978)
17. is also "Instructive" (to) such "deliberate" False statements
18. disregarding the truth to "Support" Affidavits & testimonies
19.
20. C.) Cooksey (Badge # 3761 & his partner (Devlin Badge # 1953
21. both "simultaneously" gave "False" statements disregarding
22. the truth (to) "support" defendant "falsity" (both) these
23. officers testified that plaintiff "fought" with them (when)
24. they "Handcuffed" him (to) which Cooksey on April, 2017
25. testified to such At plaintiff trial see: exhibit "F" page
26. (# 6 of 8) # 7-10 / June 24, 2016 (page 18) exhibit "G" prelim.
27. transcripts page 16 # 13-20 (devlin) "testimonies" is completely
28. different (in) which now he testifies to having "Nothing"
29. (Both) these officers signatures (at) bottom of page (6 of 8) "Nothing"

31. to do with "Handcuffing" Plaintiff on May 03, 2016; In which

32. by Such deliberate False Statements disregarding the truth;

33. The City of Philadelphia (defendant) made this arrest

34. illegal on May 03, 2016 (In) Which Plaintiff D.N.A was

35. Collected. See: Exhibit D. Inbetween # 5 & 6, And Soon (After)

36. illegal search warrant #195616 was issued (on) May 04, 2016

37. See Exhibit "B" (The) Courts must invalidate Such a tainted

38. illegal search warrant, And (All) Evidence Seized by such is

39. inadmissable And must be "Suppressed" Franks V. Delaware

40. (1978) From Such deliberate False Statements disregarding the

41. truth to "Support" Affidavits 'Page (2 of 8) # 21-41.

42.

43.    D.) defendants testimonies dont match the Physical

44. Ballistic Evidence Recovered At Scene of (incidents) And

45. the gun Recovered (At) 5320 Grays Ave. On (the) 'Front-

46. Porch of this Residence. Defendant, Schmidt, And D.A.

47. testified that Plaintiff Shot "1 time" At defendant...

48. See Exhibit "f" Page 7 of 8 # 2-4 & on April, 2019 (Schmidt)

49. testified to hearing Counting "14 gunshots" (before) he &

50. defendant go into Alley. Page 7 of 8 # 5-10. Numbers dont

51. lie / defendant & Schmidt with deliberate Falsity testified

52. that Plaintiff Shot (1 time) At defendant Page 6 of 8 # 15-18

53. Thats Now "15 gunshots" (Not) 16 (See) Exhibit "C" Page 1 #

54. 4-13 Police Recovered A total of 16 empty 22 Calibœr Shell

55. Casings. May 01, 2019 D.A testified during his Closing

56. Argument that Weapon Recovered by police A Taurus 22

57. Caliber Semi Automatic Handgun; Holds A total of "10 bullets"

58. when "Fully Loaded" & then accused Plaintiff of Fully Loading

59. Weapon And Shot (1 time) At defendant. Thats Now "20 bullets"

61. From "15" Allegedly gunshots (that) produced "16" empty 22 caliber shell

62. casings (then) Schmidt & defendant testified that plaintiff (shot) 4 or 5 more

63. times (after) being shot by defendant. In which adds up (to) 19 or 20

64. empty 22 caliber shell casings recovered by police (from) "15 gunshots"

65. (or) 20 to 21 empty 22 caliber shell casings recovered by police

66. From "16" shell casings Exhibit "C" (page 1 ¶ 4-13) Defendant & Schmidt

67. deliberate "false" statements disregarding the truth "does not match"

68. their own testimonies of "falsity" (in) which does (not) "support"

69. the physical ballistic evidence (by) The evidence recovered (by)

70. police (from) defendant & Schmidts deliberate (falsity) "insufficient"

71. physical ballistic evidence By (lack) of empty shell casings (recovered)

72. by police that were 22 caliber.

73. 

74.         E) May 01, 2019 D.A. testified (for) closing argument (that)

75. plaintiff "motive" & intent (for) shooting at defendant was (to) "avoid"

76. being arrested (on) May 03, 2016

77.

78.         D.A. Also testified that (the) "proof" to his testimony,

79. to defendant & Schmidts testimonies (is) by defendants (bullet)

80. point of "entry site" (being) on plaintiff "leftside" see page 5 or 8, (that)

81. would have plaintiff facing towards "Lindberg Ave." And (plaintiff)

82. (being) on defendants "leftside" from Schmidt illustration and by

83. both defendant & Schmidt deliberate false statements (testimonies.)

84.

85.         F) In which by such "falsity" from defendant, and

86. Schmidt deliberate "false" statements disregarding the truth; one

87. between May 03, 2016 - May 09, 2016, June 28, 2016 (Schmidt) testimony

88. At Prelim. Hearing. And at (trial) April, 2019 (defendant) And Schmidt

89. (have) deliberate "false" statements disregarding the truth, (that)

90. Got plaintiff "unlawfully" & wrongfully

91. Convicted on May 01, 2019 (In) which by such deliberate "False"

92. Statements disregarding the truth (defendant) Must be "Impeached

93. (290PA.Super166) id at 171, 98, S.Ct. 2684, 57, L.Ed 2d at

94. 682,3 (for) Violating Plaintiff 4th Amendment Right (290PA.Super 165

95.         G.) Exhibit "G" "Irrefutable" Physical Ballistic Evidence

96. That defendant Schmidt "Entire" testimonies, And (illustration)

97. Page 8 of 8 are deliberate "False" Statements disregarding the truth

98. to "Establish" Probable Cause; And to "Support" Affidavits (Schmidt)

99. testimony & illustrations (page 8 of 8)

100.        1.) Exhibit "G" proves (3) crucial factors (In) which

101. defendant must be held accountable for his "unlawful" actions

102. (for) shoot Plaintiff (when) his back was turned "posing no threat"

103. to Police (defendant (on) may 03, 2016 (#107-111)

104.        2.) That Plaintiff (was) already "executing" his

105. "Motive", And Intent (by) "running away" (from) Police (before)

106. defendant "unlawfully" shot him on May 03, 2016 (by) defendants

107. (bullet) "point of entry sites (being) on Plaintiff Right Side (sees)

108. page 8 of 8 (And) also proves that Plaintiff Right Side (sees)

109. towards "Arms Ace "when defendant shot him "unlawfully"

110.        3.) That defendant (had) "no probable cause"

111. (290PA.Super165) To violate Plaintiff 4th Amendment (by/from)

112. such deliberate "False Statements" disregarding the truth to "establish"

113. Probable Cause, (when) No Warrant Shall be "issued" without

114. Probable Cause "The Exclusionary Rule" (The) Courts must

115. invalidate Search Warrant #19.5616 (All) Evidence Seized (is)

116. Inadmissible in both Federal Weeks v. United States 232 U.S. 383,

117. 34, S.Ct. 341, 58 L.Ed 652 (1914) And State Courts Mapp v. Ohio

118. 367, U.S. 643, 81 S.Ct. 1684, 6 L.Ed 2d 1081, 16, OA 2d (191)

5 OF 8 B

119. SEE: Exhibit "C" PAGE (1 OF 24) POSSESSION OF FIREARM (IS)

120. NOT ON ORIGINAL MC-CR-0013431-2016 DOCKET NUMBER (YET) ON

121. MAY 01, 2019 PLAINTIFF WAS found guilty of POSSESSION OF A FIREARM.

122. J.) PLAINTIFF SEEKS "IMMEDIATE" RELIEF FROM Higher Courts

123. by "Judgement of Acquittal" ISSUED / ORDERED (down) to

124. LOWER COURTS (do) CASE # CP-51-CR-0006258-2016 FOR

125. PLAINTIFF to be "Immediately" RELEASED FROM Such 4TH

126. AMENDMENT VIOLATIONS by defendant, And From "UNLAWFUL "/wrongful

127. CONVICTIONS ON MAY 01, 2019. (BEFORE) July 10, 2019 SENTENCING

128. DATE,

129.

130.           Respectively,

131.     JUNE 03, 2019        Desmond Abernathy

132.                          # 1133596

133.                              CFCF

134.

135.

136.

137.

138.

139.

# EXHIBIT "B"
# SEARCH WARRANT 195616

**Commonwealth of Pennsylvania**
CITY AND COUNTY OF PHILADELPHIA — SS:

APPLICATION FOR
**SEARCH WARRANT**
AND AFFIDAVIT

WARRANT CONTROL NO.
195616

DET VALENTINE          8034          SWDD
(Name and Affiant)        (Badge No.)      (District/Unit)

ISSUE DATE CONSTANT
SWDD
5/4/16   DATE OF APPLICATION

being duly sworn (or affirmed) before me according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at particular premises or in the possession of particular person as described below.

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (Be as specific as possible):
DNA OF ABERNATHY MAURICE DESMOND PP#1133596 IN THE FORM OF SALIVA FROM THE INSIDE LINING OF HIS MOUTH

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSON TO BE SEARCHED (Street and No./Apt. No., Vehicle, Safe Deposit Box, etc.):
ABERNATHY MAURICE DESMOND PP# 1133596

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (If proper name is unknown, give alias and/or description):
ABERNATHY MAURICE DESMOND PP# 1133596

VIOLATION OF (Describe conduct or specify statute):
ATTEMPTED MURDER, AGGRAVATED ASSAULT AND RELAT

YEAR/DEPT/COMPLAINT NO.
16-12-032127

PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES (See sources and data below):
REFER TO 75-51

ATTACH ADDITIONAL PAPER (75-51) IF NECESSARY          ☐ CHECK HERE IF ADDITIONAL PAPER IS USED.

**PLEASE SEE REVERSE SIDE OF THIS PAGE FOR INSTRUCTIONS**

SIGNATURE OF AFFIANT          BADGE NO.          DISTANT
Det Valent                                     LTDD

Sworn to (or affirmed) and subscribed before me this
4th day of MAY 20 16

Date Commission Expires          (Signature of Issuing Authority)          (SEAL)

COURT LOCATION

RESULT OF SEARCH

DATE AND TIME OF SEARCH
05   1 16          4:05   ☐ A.M.  ☐ P.M.

ARREST
☐ Yes  ☐ No

JUDGE'S DISPOSITION
☐ Disc.  ☐ Hold for Court  ☐ Further Hearing  ☐ Fined or Committed

PROPERTY SEIZED
DNA SWAB COLLECTOR

☐ ADDITIONAL — IF NEEDED, USE REVERSE SIDE — INVENTORY MUST APPEAR ON ALL COPIES OF THE WARRANT

OTHER OFFICERS PARTICIPATING IN SEARCH
9176

Badge No.
9176

Badge No.
9176

TO LAW ENFORCEMENT OFFICER: WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the above described premises or person, and to seize, secure, inventory, and make return according to the Pennsylvania Rules of Criminal Procedure, the described items.

☐ Warrant should be served as soon as practicable but in no event later than ☐ A.M. ☐ P.M.   5/6   20 16
and shall be served only during daytime hours (6 A.M. to 10 P.M.)
issued under my hand this ___ day of MAY
20 16 , at 8:39 ___ M o'clock (issue time must be stated)
(SEAL)          (Signature of Issuing Authority)

☐ This warrant should be served as soon as practicable but in no event later than ___ ☐ A.M. ☐ P.M. , 20 ___ ,
and may be served anytime during day or night
issued under my hand this ___ day of ___
20 ___ , at ___ ___ M o'clock (issue time must be stated)
(SEAL)          (Signature of Issuing Authority)

Court location ___

Date Commission Expires
2017          Title of Issuing Authority          ACM

*The issuing authority should specify a date no later than two (2) days after issuance. Pa. R. Crim. P. 205(b)(3)
**If issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit and wishes to issue a nighttime search warrant, only that section shall be completed, Pa. R. Crim. P. 206(b)(4).

75-176 (Rev. 4/14)                    ORIGINAL APPLICATION - RETAINED BY AFFIANT

Commonwealth of Pennsylvania
CITY AND COUNTY OF PHILADELPHIA } SS:

APPLICATION FOR
**SEARCH WARRANT**
AND AFFIDAVIT

WARRANT CONTROL NO.
195616

DET VALENTINE          5034          SWDD
(Name and Affiant)      (Badge No.)    (District/Unit)

ISSUING DISTRICT/UNIT
SWDD

being duly sworn (or affirmed) before me, according to law, deposes and says that there is probable cause to believe that certain property is evidence of or the fruit of a crime or is contraband or is unlawfully possessed or is otherwise subject to seizure, and is located at particular premises or in the possession of particular person as described below.

DATE OF APPLICATION
5/4/16

IDENTIFY ITEMS TO BE SEARCHED FOR AND SEIZED (be as specific as possible):
DNA OF ABERNATHY MAURICE DESMOND PP#1133596 IN THE FORM OF SALIVA FROM THE INSIDE LINING OF HIS MOUTH

SPECIFIC DESCRIPTION OF PREMISES AND/OR PERSONS TO BE SEARCHED (Street and No., Apt. No., Vehicle, Safe Deposit Box, etc.):
ABERNATHY MAURICE DESMOND PP# 1133596

NAME OF OWNER, OCCUPANT OR POSSESSOR OF SAID PREMISES TO BE SEARCHED (if proper name is unknown, give alias and/or description):
ABERNATHY MAURICE DESMOND PP# 1133596

VIOLATION OF (Describe conduct or specify statute):
ATTEMPTED MURDER, AGGRAVATED ASSAULT AND RELAT

TRANSID/DC/COMPLAINT NO.
16-12-032127

PROBABLE CAUSE BELIEF IS BASED ON THE FOLLOWING FACTS AND CIRCUMSTANCES (See specific instructions below):
REFER TO 75-51

ATTACH ADDITIONAL PAPER (75-51) IF NECESSARY    CHECK HERE IF ADDITIONAL PAPER IS USED.
PLEASE SEE REVERSE SIDE OF THIS PAGE FOR INSTRUCTIONS

SIGNATURE OF AFFIANT    BADGE NO.    DIST/UNIT
Det Valent              5034         SWDD

Sworn to or affirmed and subscribed before me this
____ day of MAY 20 16
(Signature of Issuing Authority)    (SEAL)

COURT LOCATION

RESULT OF SEARCH    DATE AND TIME OF SEARCH
05   16    4:05  A.M. P.M.

ARREST  Yes  No

JUDGE'S DISPOSITION
Disc.  Hold for Court  Further Hearing  Filed or Committed

PROPERTY SEIZED    Yes
DNA SWAB COLLECTOR

IF ADDITIONAL SPACE IS REQUIRED, USE REVERSE SIDE — INVENTORY MUST APPEAR ON ALL COPIES OF THE WARRANT.
per 18 Pa. C.S. §906(d) that this is a true and correct listing of

OTHER OFFICERS PARTICIPATING IN SEARCH
9176

Badge No.
703

SIGNATURE OF WITNESS TO INVENTORY (Name and Address)
9176

TO LAW ENFORCEMENT OFFICER: WHEREAS, facts have been sworn to or affirmed before me by written affidavit(s) attached hereto from which I have found probable cause, I do authorize you to search the above described premises or person, and to seize, secure, inventory, and make return according to the Pennsylvania Rules of Criminal Procedure, the above described items.

This warrant should be served as soon as practicable but in no event later than ____ A.M. P.M. 5/6 20 16
and shall be served only during daytime hours of 6 A.M. to 10 P.M.

This warrant should be served as soon as practicable but in no event later than ____ A.M. P.M. ____ 20 ____
and may be served anytime during day or night

Issued under my hand this ____ day of MAY
20 16, at 8:39 A.M. o'clock. (Issue time must be stated)
(SEAL)
(Signature of Issuing Authority)

Issued under my hand this ____ day of ____
20 ____, at ____ M o'clock. (Issue time must be stated)
(SEAL)
(Signature of Issuing Authority)

Court location

Date Commission Expires
2011

Title of Issuing Authority
ACM

*The issuing authority should specify a date not later than two (2) days after issuance. Pa. R. Crim. P. 205(A).
**If issuing authority finds reasonable cause for issuing a nighttime warrant on the basis of additional reasonable cause set forth in the accompanying affidavit and wishes to issue a nighttime search warrant, only this section shall be completed. Pa. R. Crim. P. 206(a).

75-175 (Rev. 4/14)    ORIGINAL APPLICATION - RETAINED BY ISSUER

# EXHIBIT "C"
## PRELIMINARY HEARING TRANSCRIPTS

## 1 - 24

Page 1

IN THE MUNICIPAL COURT OF PHILADELPHIA
CRIMINAL JUSTICE CENTER
COURTROOM 703

- - - -

COMMONWEALTH        : CRIM ATT HOMICIDE
                    : AGGRAVATED ASSAULT
                    : SIMPLE ASSAULT
                    : RECKLESSLY ENDANGERING
                    : ANOTHER PERSON

VS.

                    : CARRY FIREARMS
                    : PUBLIC IN PHILADELPHIA
                    : FIREARMS NOT TO BE
                    : CARRIED WITHOUT
                    : LICENSE
                    : POSS INSTRUMENT OF
                    : CRIME

                    : ASSAULT OF LAW
                    : ENFORCEMENT

                    : RESIST ARREST
BERNATHY DESMOND    : CR 0013431 2016

- - -

PHILADELPHIA, PENNSYLVANIA
JUNE 28, 2016

- - -

BEFORE: THE HONORABLE CHRISTINE HOPE, J.

- - -

---

Page 2

[1]
[2] APPEARANCES:
[3]       JILL FERTEL, ESQ.
          ASSISTANT DISTRICT ATTORNEY
[4]       FOR THE COMMONWEALTH
[5]
          PERRY DEMARCO, ESQ.
[6]       FOR THE DEFENDANT
[7] REPORTED BY:
[8]       JANINE M. DOYLE
          OFFICIAL COURT REPORTER
[9]
[10]
[11]
[12]
[13]
[14]
[15]
[16]
[17]
[18]
[19]
[20]
[21]
[22]
[23]
[24]
[25]

---

Page 3

INDEX

WITNESS:            DR  CR  RDR  RCR
OFFICER MICHAEL SCHMIDT      4   9
OFFICER JOSEPH DEVLIN       14  16
DETECTIVE RUDOLPH VALENTINE 17  19

---

Page 4

[1]       Officer Michael Schmidt, having been
[2]   duly sworn, was examined and testified as
[3]   follows:
[4]
[5]           - - - -
[6]       DIRECT EXAMINATION
[7]           - - - -
[8]
[9] BY MS. FERTEL:
[10] Q.  Good morning.
[11] A.  Good morning.
[12] Q.  May I take you back to May 3rd of 2016 at
[13] about 11:15 p.m.  At that time were you on duty as
[14] a Philadelphia Police Officer?
[15] A.  I was.
[16] Q.  And were you working alone or with a partner?
[17] A.  I had a partner, Police Officer Edward Wright,
[18] Badge 4059.
[19] Q.  At that time, were you in plain clothes as you
[20] are today or were you and Officer Wright in full
[21] police uniform?
[22] A.  Full uniform, marked patrol car.
[23] Q.  And at any time were you and Officer Wright
[24] brought to the area of 5222 Germantown Avenue in
[25] Philadelphia?

Page 5

A.  That's correct.
Q.  Can you tell me what brought you to that location?
A.  Yes.  Your Honor, prior to arriving on location, my partner and I heard several gunshots in the area of 53rd and Grays.
Q.  And when you arrived at that location, is there anyone that you recognize in court today that was present at that date, time, and location?
A.  Yes, the defendant Mr. Desmond with the black Nike sweater.
MS. FERTEL:  If the record could reflect that the witness identified the defendant by description as well as point of the finger.
BY MS. FERTEL:
Q.  Now, what, if anything, did you observe about the defendant when you first came into contact with him?
A.  Your Honor, he was coming from the rear of the house onto an elevated porch area and he was walking outside to the porch when we first saw him.
Q.  And what, if anything, occurred at that time?
MR. DEMARCO:  Your Honor, respectfully, I ask that the record reflect

Page 6

[1]  that the officer has notes that he is
[2]  referring to at the bar of the court.
[3]      THE COURT:  I just ask when you
[4]  refer to them, you indicate you are doing so.
[5]      THE WITNESS:  Yes.
[6]      THE COURT:  I understand why he
[7]  would do that for various numbers and whatnot.
[8]  Okay.
[9]  BY MS. FERTEL:
[10] Q.  And what, if anything, occurred at that point
[11] after you saw this defendant walking up to that
[12] elevated porch?
[13] A.  The defendant pulled a silver handgun out of
[14] his waist area and fired one time and in my partner
[15] and my direction.
[16] Q.  And how far was he standing from you at that
[17] time?
[18] A.  Like I said, he was elevated about six feet up
[19] in the air.
[20]      THE COURT:  Six feet?
[21]      THE WITNESS:  Yes, ma'am, about six
[22]  feet up in the air, about fifteen to twenty
[23]  feet away.
[24] BY MS. FERTEL:
[25] Q.  And you said that the shot was pointed towards

Page 7

your partner and your direction.  Can you say where specifically about the body of your partner that was pointed?
A.  I can't specifically say, ma'am, but it was pointed at my partner.
Q.  And you mentioned he fired --
THE COURT:  At your partner or you and your partner?
THE WITNESS:  More towards my partner but I am right next to my partner so --
BY MS. FERTEL:
Q.  And after he fired that shot at your partner, what happened next?
A.  My partner returned fire two times, striking the defendant in the leg.  At which point he fell to the ground.  As he was falling, he fired a few more shots.  I don't know the exact amount.
Q.  And at that time after the defendant continued to fire and fell to the ground, what happened next?
A.  My partner and I went up the stairs that were attached to the deck.  At which point the defendant was sliding his body back into the house with the gun still pointed in our direction.  At which point when he got into the kitchen area, he kicked the



Page 8

[1]  door shut.  Immediately I kicked the door back open
[2]  and he shut it again and I kicked it open again.
[3]  This went on two or three more times.
[4]  Q.  And ultimately were you able to place the
[5]  defendant into custody?
[6]  A.  Yes.
[7]  Q.  And at the time that you finally were able to
[8]  place the defendant into custody, were you able to
[9]  recover a firearm at that point?
[10] A.  Not at that point, no.
[11] Q.  Did you notice any other people in the
[12] location at that time?
[13] A.  Yes.  There was another male, Joseph Curt, who
[14] was observed running out of the property which I
[15] was actually able to get into custody.  After
[16] getting him in custody, I come back inside, get
[17] Mr. Desmond into custody.  At which point I observe
[18] a sack on the kitchen table which was filled with
[19] live FCCs or live rounds, .22 caliber, and also
[20] some marijuana on the counter.
[21] Q.  And was this your conclusion in this part of
[22] the investigation?
[23] A.  Yes.
[24]      MS. FERTEL:  I don't have anything
[25]  further for this witness, Your Honor.

Page 5

A. That's correct.

Q. Can you tell me what brought you to that location?

A. Yes. Your Honor, prior to arriving on location, my partner and I heard several gunshots in the area of 53rd and Grays.

Q. And when you arrived at that location, is there anyone that you recognize in court today that was present at that date, time, and location?

A. Yes, the defendant Mr. Desmond with the black Nike sweater.

MS. FERTEL: If the record could reflect that the witness identified the defendant by description as well as point of the finger.

BY MS. FERTEL:

Q. Now, what, if anything, did you observe about the defendant when you first came into contact with him?

A. Your Honor, he was coming from the rear of the house onto an elevated porch area and he was walking outside to the porch when we first saw him.

Q. And what, if anything, occurred at that time?

MR. DEMARCO: Your Honor, respectfully, I ask that the record reflect

Page 6

[1] that the officer has notes that he is
[2] referring to at the bar of the court.
[3]     THE COURT: I just ask when you
[4] refer to them, you indicate you are doing so.
[5]     THE WITNESS: Yes.
[6]     THE COURT: I understand why he
[7] would do that for various numbers and whatnot.
[8] Okay.
[9] BY MS. FERTEL:
[10] Q. And what, if anything, occurred at that point
[11] after you saw this defendant walking up to that
[12] elevated porch?
[13] A. The defendant pulled a silver handgun out of
[14] his waist area and fired one time and in my partner
[15] and my direction.
[16] Q. And how far was he standing from you at that
[17] time?
[18] A. Like I said, he was elevated about six feet up
[19] in the air.
[20]     THE COURT: Six feet?
[21]     THE WITNESS: Yes, ma'am, about six
[22] feet up in the air, about fifteen to twenty
[23] feet away.
[24] BY MS. FERTEL:
[25] Q. And you said that the shot was pointed towards

Page 7

your partner and your direction. Can you say where specifically about the body of your partner that was pointed?

A. I can't specifically say, ma'am, but it was pointed at my partner.

Q. And you mentioned he fired --

THE COURT: At your partner or you and your partner?

THE WITNESS: More towards my partner but I am right next to my partner so --

BY MS. FERTEL:

Q. And after he fired that shot at your partner, what happened next?

A. My partner returned fire two times, striking the defendant in the leg. At which point he fell to the ground. As he was falling, he fired a few more shots. I don't know the exact amount.

Q. And at that time after the defendant continued to fire and fell to the ground, what happened next?

A. My partner and I went up the stairs that were attached to the deck. At which point the defendant was sliding his body back into the house with the gun still pointed in our direction. At which point when he got into the kitchen area, he kicked the

Page 8

[1] door shut. Immediately I kicked the door back open
[2] and he shut it again and I kicked it open again.
[3] This went on two or three more times.
[4] Q. And ultimately were you able to place the
[5] defendant into custody?
[6] A. Yes.
[7] Q. And at the time that you finally were able to
[8] place the defendant into custody, were you able to
[9] recover a firearm at that point?.
[10] A. Not at that point, no.
[11] Q. Did you notice any other people in the
[12] location at that time?
[13] A. Yes. There was another male, Joseph Curt, who
[14] was observed running out of the property which I
[15] was actually able to get into custody. After
[16] getting him in custody, I come back inside, get
[17] Mr. Desmond into custody. At which point I observe
[18] a sack on the kitchen table which was filled with
[19] live FCCs or live rounds, .22 caliber, and also
[20] some marijuana on the counter.
[21] Q. And was this your conclusion in this part of
[22] the investigation?
[23] A. Yes.
[24]     MS. FERTEL: I don't have anything
[25] further for this witness, Your Honor.

Page 9

THE COURT:  Defense.

- - - -

CROSS-EXAMINATION

- - - -

BY MR. DEMARCO:

Q.  Good morning.

A.  Good morning.

Q.  Am I correct this is the back alley of the home?

A.  Correct.

Q.  And who else was present outside the home that evening?

A.  Myself, my partner, and your client.

Q.  Nobody else?

A.  Nobody else.

Q.  And this was about 11:15 at night?

A.  Correct.

Q.  And it's dark outside; correct?

A.  Correct.

Q.  And were you using your flashlight to illuminate the defendant?

A.  No.  When the defendant walked out, there is a motion sensor light that popped on.

Page 10

[1] Q.  And is that light behind ..... ?

[2] A.  Above him.

[3] Q.  Are you in the dark at the time that you first

[4] see him?

[5] A.  I mean there is some alley lights out there.

[6] We do have our flashlights on.  It was dark out.

[7] It was eleven o'clock at night.

[8] Q.  When you say you had your flashlights on,

[9] that's what I was asking you.  Are the flashlights

[10] pointed at Desmond?

[11] A.  My flashlight was actually pointed down the

[12] alley.  I can't say for my partner where his was.

[13] I think he actually holstered his flashlight up.

[14] Q.  And it is your testimony that he -- at that

[15] point you are fifteen feet away?

[16] A.  Approximately.  I can't tell you the exact.

[17] Q.  And where is Officer Wright in relation to

[18] you?

[19] A.  We are standing about ten feet apart, kind of

[20] like in a triangle.

[21] Q.  To your left or to your right?

[22] A.  He would be to my right.

[23] Q.  So is he closer or further away to the

[24] defendant?

[25] A.  We are about the same distance, just in

Page 11

opposite, you know, we are about the same distance from the defendant.

Q.  And you say that at that point that the defendant raised his weapon at Mr. Wright -- excuse me -- Officer Wright?

A.  Correct.

Q.  And he fires one time?

A.  Correct.

Q.  And Officer Wright fires twice?

A.  Correct.

Q.  And you stated that at the time that the defendant fell to the ground, that he didn't fire any more shots when he is on the ground; correct?

A.  I believe it was as he was falling.

Q.  Like a reflexive shot into the air?

A.  It was more than one.

Q.  More than one?

A.  Yes.

Q.  And when he is on the ground, he doesn't fire; correct?

A.  Correct.

Q.  And what happens to the gun at that point?

A.  Like I said, I him with the gun still in his hand as he was going into the house and he kicked the door shut.

Page 12

[1] Q.  And you didn't see it after that?

[2] A.  After that, I did not.

[3] Q.  And at the time that you arrest him, he does

[4] not have a firearm on him?

[5] A.  That's correct.

[6] Q.  And fair to say when you arrest him, it's

[7] right there on the kitchen floor inside the door?

[8] A.  Negative.

[9] Q.  Where was it?

[10] A.  At that time, we didn't know.

[11] Q.  I am saying you arrested the defendant right

[12] there on the kitchen floor inside the door?

[13] A.  I am sorry.  I thought you were talking about

[14] the gun.  Yes, he was laying in the kitchen next to

[15] the refrigerator.

[16] Q.  And where was the other person in the home at

[17] that point?

[18] A.  When we entered the house finally, Mr. Curt

[19] was running down the stairs out front.

[20]        MR. DEMARCO:  That's all I have,

[21] Your Honor.

[22]        THE COURT:  Anything else?

[23]        MS. FERTEL:  Yes, Your Honor.  I

[24] have two other -- I have one question on

[25] redirect, if I may.

Page 13

BY MS. FERTEL:

[1] Q.  Just to follow-up, in addition during your
[2] interaction, did you ID yourself as police
[3] officers?
[4]         MR. DEMARCO:  Objection, beyond the
[5]    scope.
[6]         THE COURT:  I will allow it.
[7] A.  Yes, we did.
[8] Q.  Did you instruct the defendant to drop the
[9] gun?
[10] A.  Correct.
[11]        MS. FERTEL:  I don't have anything
[12]    further.
[13]        THE COURT:  What point?
[14] BY MS. FERTEL:
[15] Q.  At what point?
[16] A.  When Mr. Desmond came outside, we observed
[17] him.  We said, police.  When he pulled the gun out,
[18] we said, drop the gun.
[19]        THE COURT:  Okay.
[20]        MS. FERTEL:  I don't have anything
[21]    further for this witness.
[22]        Do you have anything based on that?
[23] BY MR. DEMARCO:
[24] Q.  When Miss Fertel asked you to state to the

Page 14

[1] judge what happened on the initial encounter, why
[2] didn't you say that?
[3] A.  Mistake.  I don't know.
[4]         MR. DEMARCO:  Nothing further.
[5]         MS. FERTEL:  I would next call
[6]    Officer Devlin.
[7]
[8]         Officer Joseph Devlin, Badge Number
[9]    1953, 12th District, having been duly sworn,
[10]    was examined and testified as follows:
[11]
[12]                      - - - -
[13]         DIRECT EXAMINATION
[14]                      - - - -
[15]
[16] BY MS. FERTEL:
[17] Q.  Officer Devlin, were you working as a
[18] Philadelphia Police Officer back on May 3rd of this
[19] year at about 11:15 to 11:30 p.m.?
[20] A.  I was.
[21] Q.  And did your tour of duty take you to the area
[22] of the 53 hundred block of Grays Avenue?
[23] A.  It did.
[24] Q.  And from that date, time, and location, is
[25] there anyone you recognize here in court today?

Page 15

[1] A.  The defendant with the black shirt.
[2]         MS. FERTEL:  If the record could
[3]    reflect that the witness has identified the
[4]    defendant Desmond Abernathy at the bar of the
[5]    court.
[6] BY MS. FERTEL:
[7] Q.  What, if anything, occurred during your
[8] encounter with this defendant?
[9] A.  I responded to an assist for shots fired by an
[10] officer.  When I showed up, I was -- took the rear
[11] alleyway and I observed the defendant lying in the
[12] kitchen with what appeared to be a gunshot wound to
[13] his leg area.  When I initially went up the stairs,
[14] I observed a pair of handcuffs that are dropped
[15] down and shells and live rounds and shell casings
[16] on the deck area before entering the property.
[17]         THE COURT:  The cuffs were there as
[18]    well?
[19]         THE WITNESS:  They were there, the
[20]    step area.
[21]         THE COURT:  Cuffs, live rounds, and
[22]    shell casings?
[23]         THE WITNESS:  Yes.
[24] BY MS. FERTEL:
[25] Q.  Did you recover anything from this defendant?

Page 16

[1] A.  I took the defendant to the hospital, Your
[2] Honor.  And search incident to arrest of the
[3] garments that the doctors had cut off, in his black
[4] coat, it had three live .22nd and one FCC, a
[5] casing.  It was like a live round that was broke in
[6] half.  No longer together.
[7]
[8]
[9]         CROSS-EXAMINATION
[10]                      - - - -
[11]
[12] BY MR. DEMARCO:
[13] Q.  You state you had brought the defendant to the
[14] hospital?
[15] A.  Yes.
[16] Q.  And he was handcuffed at that time?
[17] A.  He was handcuffed prior to me being put in the
[18] patrol car.
[19] Q.  By you?
[20] A.  Not by me, no.
[21] Q.  So basically when you got there, you were just
[22] there pretty much to transport him?
[23] A.  Pretty much.
[24] Q.  Where did you say you found the rounds?
[25] A.  They were scattered the rounds on his

Page 17

[1] clothing?

[2] **Q.** Correct?

[3] **A.** They were in the black coat he had.

[4] **Q.** The black coat, you said he was wearing it?

[5] **A.** He was wearing it. It was cut off by the

[6] doctors at this hospital.

[7]     **MS. FERTEL:** My final witness is

[8] Detective Valentine.

[9]

[10]     Detective Rudolph Valentine, Badge

[11]     Number 9084, currently assigned to Southwest

[12]     Detective Division, having been duly sworn, was

[13]     examined and testified as follows:

[14]

[15]          - - - -

[16]     DIRECT EXAMINATION

[17]          - - - -

[18]

[19] **BY MS. FERTEL:**

[20] **Q.** Good morning.

[21] **A.** Good morning.

[22] **Q.** Were you involved in an investigation of a

[23] shooting at 5322 Grays Avenue in Philadelphia on

[24] May 3rd?

[25] **A.** Yes.

Page 18

[1] **Q.** And as part of the your investigation, did you

[2] arrive at that scene?

[3] **A.** Yes.

[4] **Q.** And did you recover any ballistic evidence

[5] from that scene?

[6] **A.** Yes.

[7] **Q.** And can you tell me what, if anything, you

[8] recovered?

[9] **A.** Twenty-two -- I mean it was sixteen .22

[10] caliber shell casings that was recovered from the

[11] rear of that property. It was also two .45 caliber

[12] shell casings that was recovered from the rear of

[13] that property.

[14] **Q.** And did you ultimately recover a .22 caliber

[15] firearm from that property?

[16] **A.** It was recovered -- yes, we did. It was

[17] recovered from the next door neighbor's porch from

[18] 5320. It was on a grill. It was covered by a

[19] grill cover. So it was in between the actual grill

[20] and the cover.

[21] **Q.** And were you also -- did you also encounter a

[22] defendant by the name of Joseph Curt?

[23] **A.** Yes.

[24] **Q.** And was Joseph Curt subsequently placed under

[25] arrest?

Page 19

[1] **A.** He was.

[2] **Q.** And for what?

[3] **A.** For obstruction of justice and tampering with

[4] evidence and for the firearm.

[5] **Q.** When you say for the firearm, what was he

[6] alleged to have done?

[7] **A.** Take the firearm from that location and put it

[8] in that grill.

[9]     **MS. FERTEL:** I don't have anything

[10]     further at this time.

[11]

[12]          - - - -

[13]     CROSS-EXAMINATION

[14]          - - - -

[15]

[16] **BY MR. DEMARCO:**

[17] **Q.** The other defendant that was just mentioned,

[18] you interviewed him when this occurred; correct?

[19] **A.** I didn't, no.

[20] **Q.** Who did?

[21] **A.** Other detective, yes.

[22] **Q.** Are you ultimately the one that arrested him?

[23] **A.** Yes.

[24] **Q.** And when you told Her Honor that you arrested

[25] him for obstructing and for tampering, et cetera,

Page 20

[1] that was because you found out that hid this

[2] weapon; correct?

[3] **A.** Yes.

[4] **Q.** And you arrested him for possessing that

[5] weapon; correct?

[6] **A.** For hiding the weapon, yes.

[7] **Q.** And possessing it as well; correct?

[8] **A.** I would imagine, yes.

[9] **Q.** I am not asking to you imagine. I am asking

[10] what you charged him with?

[11] **A.** I charged him with the obstruction and

[12] actually I have to take a look to see all the

[13] charges that he was charged with. He was charged

[14] with several crimes.

[15] **Q.** Didn't you tell Her Honor that you arrested

[16] for possession of a weapon?

[17] **A.** Obstruction of justice and firearm.

[18] **Q.** So and you found out that he also lied to you

[19] guys about having that weapon; correct?

[20] **A.** Yes.

[21] **Q.** And he lied about what he did with that

[22] weapon; correct?

[23] **A.** He lied about having a weapon.

[24] **Q.** Do you know whose weapon that is?

[25] **A.** I would actually have to look at the file or

Page 21

[1] actually look at the -- I don't know.

[2]     MS. FERTEL: Nothing further, Your

[3] Honor.

[4]     THE COURT: Very good.

[5]     Commonwealth, are you finished with

[6] this witness?

[7]     MS. FERTEL: I am finished with this

[8] one witness, Your Honor. At this time I have

[9] no additional live testimony.

[10]    I would mark as Commonwealth Exhibit

[11] 1 the defendant's FBI extract indicating a

[12] conviction for assault of a police officer

[13] which would make him ineligible to possess a

[14] firearm under 6105.

[15]    And, Your Honor, with that marked

[16] and moved, the Commonwealth would rest for

[17] purposes of the preliminary hearing.

[18]    THE COURT: Defense rests?

[19]    MR. DEMARCO: Yes, Your Honor.

[20]    THE COURT: No argument at this

[21] time.

[22]    MR. DEMARCO: Just brief argument

[23] with regards to obviously there is a technical

[24] hearing and I have seen thousands of these but

[25] the issue is that the bulk of these charges

Page 22

[1] are based upon an assault on Officer Wright

[2] who failed to testify today. And although the

[3] Officer Schmidt is here to testify as to his

[4] observations, it goes to the fact that the

[5] actual victim upon who these charges are

[6] levied never testified. There is no evidence

[7] from that victim directly to this Court.

[8]     THE COURT: Right.

[9]     MR. DEMARCO: Furthermore, judge, I

[10] think you have also seen enough to know that

[11] there is an issue with regards to the

[12] resisting arrest, to wit -- I don't know where

[13] in the testimony that there was actually a

[14] resist. I mean I don't know.

[15]    THE COURT: Well, the slamming of

[16] the door.

[17]    MR. DEMARCO: The slamming of the

[18] door.

[19]    THE COURT: And it wasn't just once.

[20] It was a number of times.

[21]    MR. DEMARCO: That's true but I

[22] would submit to you that's the retreat after

[23] being shot at. But anyway, I will leave it to

[24] the Court's discretion.

[25]    THE COURT: I think at this level

Page 23

[1] the resisting is there. I did think it

[2] through.

[3]     In terms of the aggravated assault

[4] and Wright, I think that the police officer,

[5] he clearly said that he fired and he pointed

[6] the gun at us, more so at my partner, but it

[7] was pointed at us. I was standing right next

[8] to him. So I think there is enough here.

[9] There is definitely enough here so I am going

[10] to hold it for court on all charges.

[11]    You will be arraigned on July 12th,

[12] year 2016, in J 104, 11:00 a.m.

[13]    Please understand should you secure

[14] your release and you are required to appear in

[15] the future at a hearing and you fail to

[16] appear, the Commonwealth can ask for the

[17] issuance of a bench warrant seeking your

[18] arrest or they can go forward with your matter

[19] without you being present. So it's really

[20] important that you understand that you need to

[21] appear.

[22]    THE DEFENDANT: Did I have a right to

[23] say anything?

[24]    THE COURT: Not at this level. It's

[25] only an evidentiary hearing to figure out if

Page 24

[1] there are -- there was enough evidence to hold

[2] the charges over.

[3]     THE COURT: Listen to me.

[4]     MR. DEMARCO: I would advice you on

[5] the record not to say anything.

[6]     THE COURT: You will get a chance to

[7] tell your version at trial if that's how you

[8] choose to handle your matter, dispose of your

[9] matter, but it was the Commonwealth's burden

[10] today. That's why you are not speaking.

[11] Okay.

[12]

[13]    (TESTIMONY CONCLUDED)

[14]

# EXHIBIT "D"
# A APPROVED SUMMARY

Philadelphia Police Department Investigation Report

DC Number   2016-12-032127
Report No   2016-12-032127.1
Report Date   5/9/2016 1:16:20 AM
Report Type   Investigation Report (75-49)



A - Approved
Page 1 of 8

Unit Control#: 2016-6500-005087-0

| | | | |
|---|---|---|---|
| Classification | 0421 - AGGRAVATED ASSAULT ON POLICE OFF HANDGUN | Occurred On | 5/3/2016 11:14:00 PM |
| Previous Classification | 0421 - AGGRAVATED ASSAULT ON POLICE OFF HANDGUN | Reported On | 5/3/2016 11:14:02 PM |
| Location of Occurrence | 5322 Grays Ave | Disposition Status | 2 - Arrest |
| Dist/Sect of Occurrence | 12th District PSA 3 | Clearing Unit | 1200 - 12th District |
| Responding Officer | P/O MICHAEL SCHMIDT (PR 271345 / #6680) | Investigating Officer | Det RUDOLPH VALENTINE JR (PR 248083/ #9084) |
| Assisted By | | Dist/Unit Preparing | 6500 - Southwest Detectives |
| Related Cases | | | |

Report Approval

| | | |
|---|---|---|
| Created | 5/9/2016 1:16:20 AM | Det RUDOLPH VALENTINE JR (PR 248083 / #9084) |
| Approved | 5/11/2016 11:36:04 PM | Sgt AARON HORNE JR. (PR 258582 / #8615) |

Report Summary

On 5-3-16 at 11:14pm P/O Wright #4059 and P/O Schmidt #6680 were working the 6pm to 2am tour of duty in full uniform when they heard gunshots in the area of 53rd and Grays. Their investigation led them to the rear of the 5332 Grays Ave where they encountered a male later identified as Abernathy Maurice Desmond PP#1133596. The male raised a firearm at officers and fired at P/O Wright #4059, P/O Wright #4059 fired his service weapon twice striking the male once in the thigh. The male retreated into the rear door of 5332 Grays Ave and shut the door with his feet. The male fired approx. four or five shots in the air as he fell through the door into 5332 Grays Avenue. Officers attempted several times to make entry and the male (Abernathy Desmond) kept kicking the door closed. Officers were eventually able to gain entry and take the male into custody. He was transported to Presbyterian E.R. where he was listed in stable condition. There were spent FCC's located in the rear of 5332 Grays Avenue. 5322 Grays Avenue was held as a crime scene.

The owner (Curt Joseph) of the house was present and transported to SWDD where he was interviewed. He stated in summary that he was inside his house when his neighbor, Abernathy Maurice Desmond PP#1133596, entered through the rear door. The owner began preparing marijuana for them to smoke when Desmond went out back again. The witness states he then heard at least three gunshots and saw Desmond on his kitchen floor kicking the rear door shut. The witness got scared and ran out of the front of the house where he was stopped by police.

A search warrant was obtained and executed at 5322 Grays Avenue by members of Southwest Detective Division and the Crime Scene Unit. (16) 22 caliber FCC's were recovered from the rear of 5322 Grays Avenue as well as (one) other FCC's. Blood samples were collected and photos were taken. (29) .22 caliber live rounds were recovered as well as a small amount of marijuana (one clear plastic ziplock packet containing a green weedy substance alleged marijuana)(one folded paper towel containing a small amount of a green weedy substance). A 22 caliber Taurus handgun was recovered from the porch of 5330 Grays Avenue on a Barbeque grill. The firearm was loaded with five rounds (one of which was chambered).

The owner of 5322 Grays Avenue was re-interviewed after he was given his Miranda warnings were given and waived. The owner (Curt Joseph) stated that after the shooter (Abernathy Desmond) entered the property, he observed a firearm slide out of his hand onto the floor. Defendant Joseph then stated that he picked up the firearm and ran out the front door. Defendant Joseph stated after running out the property he hid the firearm on the porch of 5330 Grays Avenue in a barbeque grill which was covered with a tarp. Defendant Joseph stated he didn't know he was running from police but thought he was running from "kids" when he hid the firearm. Defendant Joseph stated he hid the firearm because he was scared. After hiding the firearm defendant Joseph was stopped by police.

Defendant Desmond's clothing was taken from the hospital and placed on property receipts and submitted for GSR testing. (3) 22 caliber live rounds were recovered from the defendant's pants pocket. (one) (1) projectile was recovered from the defendant's clothing. The fcc and projectile recovered is of the same caliber and appears to have been fired from the same firearm.

Defendant Joseph was run through the ??? his hands were ??? ??? swabbed for G.S.R. residue ??? ??? were ??? ??? to ??? for G.S.R. testing.

Neighborhood surveys were conducted and attempts to locate surveillance cameras were made.
Desmond's DNA was obtained.
Desmond's clothes were collected and submitted for GSR testing.
Desmond's cell phone was taken.
Firearm was submitted for DNA and fingerprint analyses.
Joseph's DNA was obtained.
CCI obtained.
Radio tapes were obtained.
(1) Cartridge containing a projectile was recovered by police from the medical staff ???
Narcotics was tested and proved positive for the presence of marijuana base.

SWDD assigned Detective Valentine# 9084
CSU Assigned: Police Officer Fox# 2164
???: Lieutenant Wendershot# 148

# EXHIBIT "E"
# Franks v. Delaware (1978)

2 OF 8

1.  A.) City of Philadelphia (Not) Et'Al defendant Badge # 4059
2.  ON & between May 03, 2016 - May 09, 2016 (made) deliberate
3.
4.  "False" Statements disregarding the truth (as) A Necessary
5.  to "Establish" Probable Cause (for) Shooting Plaintiff, And then
6.  illegally Arresting Plaintiff on May 03, 2016 "Without"
7.  Probable Cause* Franks V. Delaware 438 U.S. 154, 98, S. Ct, 2674,
8.
9.  57, L. Ed 2d 667 (1978) is Instructive (to) Such deliberate
10. False statements, disregarding the truth (when) there (is)
11. "No Probable Cause" (otherwise) # 28-41 (page 3 of 8)
12.
13.      B.) Schmidt Badge # 3761 defendants Partner made deliberate
14. "False" Statements disregarding the truth (to) "Support"
15. defendant Affidavits And Also gave/included A illustration
16. of Such Falsity page 8 of 8 to Support defendants "unlawful"
17. Actions on May 03, 2016 (in) which* Franks V. Delaware (1978)
18. is Also "Instructive" (to) Such "deliberate" False Statements
19. disregarding the truth to "Support" Affidavits & (testimonies)
20.
21.      C.) Cooksey Badge # 3761 & his Partner Devlin Badge # 1953
22. both "Simultaneously" gave "False" Statements disregarding
23. the truth (to) "Support" defendant "Falsity" (Both) these
24. officers testified that Plaintiff "Fought" with them (when)
25. they "Handcuffed" Him (in) which Cooksey on April, 2019
26. testified to Such At Plaintiff trial See: Exhibit "F" page
27. (# 6 of 8) # 7-10 ; June 28, 2016 (page 16) Exhibit "C" prelim.
28. transcripts page 16 # 13-20 (devlin) "testimonies" is completely
29. different (in) which Now he testifies to Having "Nothing"
30. (Both) these officers signatures (at) bottom of page (6 of 8) "Nothing"

31. to do with "HANDCUFFING" PLAINTIFF ON MAY 03, 2016; IN Which
32. by Such DELIBERATE FALSE STATEMENTS disREGARDING the truth;
33. The City OF PHILADELphia (defendant) MADE this ARREST
34. illEGAL ON MAY 03, 2016 (IN) Which PLAINTIFF D.N.A WAS
35. Collected. SEE: Exhibit D InbetweeN # 5 & 6, And SooN (AFTER)
36. ILLEGAL SEARCH WARRANT #195616 WAS issued (on) MAY 04, 2016
37. SEE! Exhibit "B" (The) Courts must INVALIDATE Such A tAINTED
38. illEGAL Search WARRANT, And (All) EVIDENCE SEIZED by SuCh is
39. INADMISSABLE And MUST bE "SUPPRESSED" FRANKS V. DELAWARE
40. (1978) From Such deliberate FALSE STATEMENTS disREGARDING the
41. truth to "Support" AFFIDAVITS 'PAGE (2 OF 8) # 21-41.

42.     D.) DEFENDANTS tEStIMONIES dont MATCH the PhysicAL
43. BAllistic EVIDENCE RECOVERED At SCENE of (incident) And
44. the gun RECOVERED (At) 5320 (RAys AVE. On) (At the) FRONT-
45. PORtch OF this RESidENCE. DEFENDANT, Schmidt, And D.A
46. tEStified thAt PLAINTIFF Shot "1 timE" At dEFENDANT.
47. SEE! ExhibIT "F" pAGE 7OF 8 # 2-4 & ON APRIL, 2019 (Schmidt)
48. tEStified to hEARing CountINg "14 gunshots" (bEForE) hE &
49. dEFENDANT go into Alley. PAGE 7 OF 8 #5-10 NumbERS dont
50. LIE /dEFENDANT & Schmidt with dELIbERATE FAISITY tEStified
51. thAt PLAINTIFF Shot (1 timE) At dEFENDANT PAGE 6 OF 8 # 15-18
52. ThAts Now "15 gunshots" (NOT) 16 (SEE) Exhibit "C" PAGE 18 #
53. 4-13 POlice RECOVERED A tOtAl OF 16 Empty 22 CALibER ShEll
54. CASINGS. MAY 01, 2019 D.A tEStiffED during his Closing
55. ARGUMENt thAt WEAPON RECOVERED by POlice A TAURUS 22
56. CAlibER SEmi AutomAtic HAndgun; HOlds A tOtAl OF "10 bullEts"
57. when "Fully lOadED" & then ACCuSED PLAINTIFF OF FULLY LOAdINg
58. WEAPON And Shot (1 timE) At dEFENDANT. ThAts Now "20 bullEts"

61. FROM "15 Allegedly gunshots" (that) PRODUCED "16" empty 22 CALIBUR SHELL
62. CASINGS (then) Schmidt & defendant testified that PLAINTIFF (shot) "4 OR 5
63. MORE times (AFTER) being shot by defendant. In which Adds-up (to)
64. 19 OR 20 empty 22 CALIBUR SHELL CASINGS RECOVERED by POLICE (FROM)
65. "15 GUNSHOTS" (OR) 20 to 21 empty 22 CALIBUR SHELL CASINGS † EXHIBIT "C"
66. PAGE (18 # 4-13) DEFENDANT & Schmidt deliberate "FALSE" STATEMENTS
67. disregarding the truth "does NOT MATCH" their own testimonies OF
68. "FALSITY" (in) which does (Not) "SUPPORT the PHYSICAL BALLISTIC EVIDENCE
69. By THE EVIDENCE RECOVERED (by) POLICE (FROM) DEFENDANT & Schmidts
70. deliberate (FALSITY) "INSUFFICIENT" PHYSICAL BALLISTIC EVIDENCE:
71. † BY (LACK) OF empty SHELL CASINGS (RECOVERED) by POLICE that
72. WERE 22 CALIBUR.

73.          E, MAY 01, 2019 D.A. testified (FOR) CLOSING ARGUMENT
74. (THAT) PLAINTIFF "MOTIVE" & INTENT (FOR) Shooting AT DEFENDANT
75. WAS (to) "AVOID" being ARRESTED (ON) MAY 03, 2016
76.
77.          D.A. Also testified that (the) "PROOF" to his testimony,
78. to defendant & Schmidts testimonies (is) by defendants (BULLET) point
79. OF "ENTRY SITE" (being) ON PLAINTIFF "LEFT SIDE" SEE: PAGE 8 OF 8, (THAT)
80. would HAVE PLAINTIFF FACING towards "Lindberg AVE", And (PLAINTIFF) being
81. ON DEFENDANTS "LEFT SIDE" FROM Schmidts ILLUSTRATION, And by both
82. defendant & Schmidt deliberate FALSE STATEMENTS (testimonies)
83.          F.) In which by Such "FALSITY" FROM defendant, And
84. Schmidt deliberate "FALSE" STATEMENTS disregarding the truth; ON †
85. BETWEEN MAY 03, 2016 - MAY 09, 2016, JUNE 28, 2016 (Schmidt)
86. testimony AT PRELIM-HEARING. And AT (TRIAL) ~~~~~~~~~~
87. APRIL, 2019 (defendant, And Schmidt (9 AVE) deliberate "FALSE"
88. STATEMENTS disregarding the truth that got PLAINTIFF
89.          UNLAWFULLY & WRONGFULLY
90.

91. Convicted on May 01, 2019 (In) which by such deliberate "false"
92. Statements disregarding the truth (defendant) must be "Impeached"
93. (290 PA. SUPER 166) id at 171, 98, S. Ct. 2684, 57, L. Ed 2d At
94. 682, 3 (for) Violating Plaintiff 4th Amendment Right (290 PA. SUPER 165)
95.        G.) Exhibit "G" "Irrefutable" Physical Ballistic Evidence
96. that defendant & Schmidt "Entire" testimonies, And (illustration)
97. Page 8 of 8 are deliberate "false" Statements disregarding the truth
98. to "Establish" Probable Cause, And to "Support" Affidavits (Schmidt)
99. testimony & illustrations (Page 8 of 8)
100.        1.) Exhibit "G" proves (3) crucial factors (In) which
101. defendant must be held accountable for his "Unlawful" Actions
102. (for) shoot Plaintiff (when) his back was turned "posing No Threat"
103. to Police / defendant (on) May 03, 2016 (# 107-111)
104.        2.) That Plaintiff (Was) Already "Executing" his # 72-81
105. "Motive", And Intent (by) "Running Away" (from) Police (before)
106. defendant "Unlawfully" Shot him on May 03, 2016. (By) defendants
107. (bullet) "point of Entry site (being) on Plaintiff Right side (See)
108. Page 8 of 8 (And) also proves that Plaintiff was "Already" facing
109. towards "Grays Ave" when defendant shot him "unlawfully"
110.        3.) That defendant (had) "No Probable Cause"
111. (290 PA. SUPER 165) To Violate Plaintiff 4th Amendment (by / from)
112. Such deliberate "false statements" disregarding the truth to "establish"
113. Probable Cause. (when) No Warrant Shall be issued "Without"
114. Probable Cause "The Exclusionary Rule (The) Courts Must
115. Invalidate Search Warrant #195616 (And) Evidence Seized (is)
116. Inadmissible in both Federal Weeks V. United States 232, U.S. 383,
117. 34, S. Ct. 341, 58 L. Ed 652 (1914) And State Courts Mapp V. Ohio
118. 367, U.S. 643, 81, S. Ct. 1684, 61, L. Ed. 2d 1081, 16, OP. 2d (1961)

5 OF 8 B

119. SEE, EXhibit "C" PAGE(1 OF 24) POSSESSION OF FIREARM (is) NOT ON

120. ORIGINAL MC-CR-0013431-2016 DOCKET NUMBER (YET) ON MAY 01, 2019

121. PLAINTIFF WAS found guilty OF POSSESSION OF A FIREARM.

122.    J.) PLAINTIFF SEEKS "IMMEDIATE" RELIEF FROM HIGHER COURTS

123.    by "Judgement OF ACQUITTAL" ISSUED /ORDERED (down) to

124.    LOWER COURTS (to) CASE # CP-51-CR-0006258-2016 FOR

125.    PLAINTIFF to be "Immediately" RELEASED FROM SUCH 4TH

126.    Amendment Violations by defendant, AND FROM "UNLAWFUL"/WRONGFUL

127.    CONVICTIONS ON MAY 01, 2019 (BEFORE) July 10, 2019 SENTENCING

128.    DATE.

129.

130.    JUNE 03, 2019                     Respectively,
                                          Desmond Abernathy
131.                                          #1133596
                                             CFCF
132.

133.

134.

135.

136.

137.

138.

139.

# EXHIBIT "F"
# PAGES 6 OF 8, 7 OF 8, & 8 OF 8.

6 of 9

| INVESTIGATION INTERVIEW RECORD | | PHILADELPHIA POLICE DEPARTMENT SOUTHWEST DETECTIVE DIVISION | | | | CASE NO. |
|---|---|---|---|---|---|---|
| | | | | | | INTERVIEWER: Det. Seidel #907 |
| NAME P/O Cooksey# 3761,271362,3D | | AGE | RACE | SEX | DOB | SOCIAL SEC NO. |
| ADDRESS 12th District | APT # | CITY | | STATE | ZIP | PHONE # 6-3120 |
| NAME OF EMPLOYMENT / SCHOOL City of Phila | | | | | | |
| ADDRESS OF EMPLOYMENT / SCHOOL | | | | | PHONE # | |
| DATES OF PLANNED VACATIONS | | | | | | |
| NAME OF CLOSEST RELATIVE | | | | | | |
| ADDRESS | | | | | | |
| | | | | | PHONE | |
| PLACE OF INTERVIEW Southwest Detective Division | | | | | DATE 5/4/16 | TIME 2:40 am |
| BROUGHT IN BY | | | | | DATE | TIME |
| WE ARE QUESTIONING YOU CONCERNING: Assault on Police 5322 Grays Ave | | | | | | |
| WARNINGS GIVEN BY: | | | | | DATE | TIME |
| ANSWERS (1) | (2) | (3) | (4) | (5) | (6) | (7) |

1 Q. My name is Det Seidel #907, what brings you to SWDD tonight?
2 A. On 5/3/16 I was assigned 12P8 with P/O Devlin #1953, working 8p-4a, uniform in marked vehicle and at approx
3 11:12pm we responded to R/C of Officer in foot pursuit 5400 Grays with a male firing shots at them. We arrived on
4 location and P/O Schmidt #6680 had come over the air of in the alley 54th and Grays right off Lindbergh Ave, So we
5 entered the alley and heard the commotion and went in the rear door and observed a B/M later identified as Desmond
6 Abernathy dob 1/25/66, 5326 Grays Ave, laying on the kitchen floor with an apparent gunshot wound to the groin
7 area. The male was yelling and cursing at police and didn't want to leave by the alley. He kept reaching for his leg
8 area and resisted being handcuffed. We tried to get him to the hospital, and take him out and he kept actively
9 resisting being taken out and being cuffed. We carried him out the rear and down the steps into the RPC and took him
10 to Presby Hospital. While at the hospital, P/O Devlin recovered 4 live 22 caliber rounds from the Deft's jacket
11 pocket and while hospital staff was removing his clothes a 45cal projectile that went through his leg, fell out of his
12 pants. We remained at the hospital until we got relief and then collected the Deft's clothing and took it to SWDD
13 where all the items were turned over to Detectives.

Q: Did the male say anything to you?
A: Just kept saying he was innocent. I didn't shoot at the police.
Q: Did anyone identify the Deft?
A: Yes, P/O Schmidt said that he was the guy that was shooting at them

| REVIEWED BY: | CHECKED BY: |
|---|---|
| 75-483 (Rev. 7/82)   P/o Cooksey #3761 | P/O Devlin #1953 |

Defense Copy

| INVESTIGATION INTERVIEW RECORD | | PHILADELPHIA POLICE DEPARTMENT | | CASE NO. | | 7058 |
|---|---|---|---|---|---|---|
| | | | | INTERVIEWER MAU | | |

| NAME | | AGE | RACE | DOB | | |
|---|---|---|---|---|---|---|
| P/O SCHMIDT #6680 | | | | | | |

| ADDRESS | APARTMENT NO. | PHONE NO. |
|---|---|---|
| 12TH DISTRICT | | 6-3120 |

| NAME OF EMPLOYMENT/ SCHOOL | SOC. SEC. NO. |
|---|---|
| SQUAD-5B/PR#271345 | |

| ADDRESS OF EMPLOYMENT/ SCHOOL | DEPARTMENT | PHONE NO. |
|---|---|---|
| | | |

| DATES OF PLANNED VACATIONS |
|---|
| |

| NAME OF CLOSE RELATIVE |
|---|
| |

| ADDRESS | PHONE NO. |
|---|---|
| | |

| PLACE OF INTERVIEW | | DATE | TIME |
|---|---|---|---|
| SWDD | | 5-4-16 | 1210AM |

| BROUGHT IN BY | | DATE | TIME |
|---|---|---|---|
| SELF | | 5-4-16 | 1200AM |

| WE ARE QUESTIONING YOU CONCERNING: POLICE SHOOTING AT 5322 GRAYS A... |
|---|

| WARNINGS GIVEN BY: | DATE | TIME |
|---|---|---|
| | | |

| ANSWERS | | | | | | |
|---|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) | (7) |

Q- I am Det. Maurizio #604. We are investigating the police shooting at 5332 Grays ave. tell me in your own words what happened?

A- My partner, P/O Wright #4059, and I were working as [...] in full uniform when we were in the area of 5800
Grays ave. We both what appeared to be 8 gunshots coming from the area of 54th and Grays ave. I notified
police radio that we were stating over in the area of 54th and Grays ave. We arrived at 5400 Grays and heard about 6
more gunshots in the immediate area. At which point I drove over to the area of 54th and Lindbergh thinking the
gunshots were coming from Bartram [...]. I spoke to a passerby on the 5400 block of Lindbergh and he
stated that the gunshots were coming from 53[...] area. We continued to survey the area, when police radio
notified us that a 911 call came in at 5309 Grays ave. for gunshots. Multiple units were in the area. I told P/O
Wright that there was a rear alley to 53[...] Grays off of Lindbergh blvd. The alley is like an L shape, and I parked
the police vehicle in the entrance way of the alley, and we walked in the alley. The alley way opened up into a
large driveway for the rear of 53[...] Grays and 5300 Lindbergh. We approached on foot and we observed a light
come on on the 53[...] block of Grays side, the rear of. We then observed a male step onto an elevated porch, the
rear of 5322 Grays and P/O Wright engaged the male and announced ourselves as police officers and P/O
Wright ordered the male to show us his hands. P/O Wright was closer to the male then I was. I was about 20 feet
from P/O Wright, I was closer to 5324 Grays. At which point P/O Wright ordered the male to show us his
hands, the male pulled out a silver handgun. We both ordered the male to drop the gun. The male then fired a
shot in the direction of P/O Wright. P/O Wright returned fire twice, striking the male in his leg. The male
retreated back [...] falling back into the house, fired 4-5 more shots into the air. He fell back into the kitchen
area of the house and shut the back door. P/O Wright and I took the stairs of the deck and I kicked open the
back door, we observed the male laying by the refrigerator but we were unable to see his hands. The male
kicked the door closed again and I kicked open the door, and he kicked it closed again, and I kicked it open
again. The male kicked it closed again. P/O Wright took position on the right side of the door and there is a
little walkway alongside the kitchen on the deck and I looked in to the property and I noticed the front door was
open. I told responding officers to look for the open front door that that was the house we were at. I kicked open

AH 7-6680

| CHECKED BY: | |
|---|---|



# EXHIBIT "G"
# IRREFUTABLE EVIDENCE

mathy, Desmond M (MR # 450975149)                                              Encounter Date: 05/03/2016

ging Results (continued)

COMPARISON: Radiograph of the right femur performed the same evening

FINDINGS:
Again seen is subcutaneous emphysema and retained blastic shrapnel in the right thigh. The comminuted fracture of the right mid femoral diaphysis is in largely unchanged alignment. There is lateral displacement of the dominant distal fracture fragment by
one shaft width. There is approximately 1 cm of overriding of the dominant fracture fragments.



CT LOWER EXTREMITY ANGIO W AND WO IV CONTRAST (Preliminary result)          Result time: 05/04/16 00:44:44
Preliminary result by McGinn, Christopher, MD (05/04/16 00:44:44)
Impression:

1. Comminuted, ballistic induced fracture of the mid femoral shaft with numerous retained ballistic fragments about the fracture site.
2. No acute arterial injury. Ill-defined areas of hyperattenuation along the bullet tract that could represent venous bleeding or slow oozing from small, perforating muscular arteries.
3. Small superficial hematoma in the right anterior thigh at site of bullet entry/exit.
4. Superficial penetrating injury to the left anterior thigh without vascular injury or hematoma.

Narrative:
History: Trauma.



Technique: CT angiography of the lower extremities was performed. Pre-contrast images followed by arterial phase CTA was performed of the lower extremities. Finally, delayed post-contrast scanning was performed.

Contrast: 100 ml Isovue 370 IV

Comparison: None.

POST PROCESSING:3D advanced post-processing was performed by the interpreting physician using an independent workstation utilizing a combination of MIP and MPR techniques to better evaluate anatomy and disease process. 3D rendering was performed with
physician participation and supervision.

FINDINGS:
There is a comminuted, ballistic induced fracture through the right femoral midshaft with one full shaft width lateral displacement of the main distal fracture fragment. Paperclips mark the site of penetrating trauma. There are several retained ballistic fragments along the path within the right lateral thigh. The SFA and profunda femoris are intact with three-vessel runoff on the right. No large hematoma or evidence of active arterial contrast extravasation. A few ill-defined areas of hyperattenuation along the path of the bullet path likely reflect venous bleeding or slow oozing from small, muscular arterial branches. A small superficial hematoma is located in the anterior mid thigh (series 303, image 322).

There is a superficial penetrating injury along the left anterior thigh with minimal muscular involvement. No acute vascular injury on the left. Three-vessel runoff.

Visualized portions of the abdomen and pelvis are unremarkable.

CT LOWER EXTREMITY ANGIO W AND WO IV CONTRAST (Preliminary result)          Result time: 05/04/16 00:44:44
Preliminary result by McGinn, Christopher, MD (05/04/16 00:44:44)
Impression:

1. Comminuted, ballistic induced fracture of the mid femoral shaft with numerous retained ballistic fragments about the fracture site.
2. No acute arterial injury. Ill-defined areas of hyperattenuation along the bullet tract that could represent venous bleeding or slow oozing from small, perforating muscular arteries.
3. Small superficial hematoma in the right anterior thigh at site of bullet entry/exit.
4. Superficial penetrating injury to the left anterior thigh without vascular injury or hematoma.

Narrative:
History: Trauma.



mathy, Desmond M (MR # 450975149) Printed at 5/4/16                     CA-51-CR-0006258-2016   Page 19 of 46
AM

Philadelphia Dept. of Prisons
Philadelphia, PA. 19136
PPN # 1133596

EXHIBIT "A"

To: Clerk of Uni
For The Ea
—— Penn
#601 Marke
—— Philad